IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| DARNELL LAMAR HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 418-040 |
| | ) | |
| JOHN P. MORRIS, Task Force | ) | |
| Detective, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case brought pursuant to 42 U.S.C. § 1983, regarding events alleged to have occurred in Chatham County, Georgia. Before the Court is Defendant John P. Morris's motion for summary judgment. (Doc. no. 34.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Detective Morris's motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in his favor, Plaintiff's claims against the John Doe Defendants be **DISMISSED** without prejudice for failure to timely effect service, all John Doe Defendants be **DISMISSED** from this case, and this civil action be **CLOSED**. The Court further **RECOMMENDS** Plaintiff be **DENIED** leave to appeal IFP.

I.      **PROCEDURAL HISTORY**

Plaintiff filed this case on March 1, 2018 against Savannah Police Department ("SPD") detectives Aaron McKie and John P. Morris, as well as unidentified task force

officers.  (See doc. no. 1, p. 1.)  Plaintiff contends Detective Morris used excessive force while arresting Plaintiff, the task force officers failed to intervene, and Detective McKie falsified sworn statements concerning Plaintiff's injuries.  (Id. at 6.)

On July 16, 2018, the Court allowed past screening Plaintiff's excessive force claim against Detective Morris and the unidentified task force officers, and dismissed all claims against Detective McKie because the complaint failed to state a claim.  (Doc. nos. 6, 8.)  The Court directed the United States Marshal to serve Detective Morris and informed Plaintiff once Detective Morris was served and responded to Plaintiff's Complaint, Plaintiff may use the appropriate discovery mechanisms to identify the Doe officers.  (Id. at 13.)  The Court informed Plaintiff he was responsible for identifying the Doe officers.  (Id.)  On April 2, 2019, the Court further reminded Plaintiff the Doe officers must be identified through discovery.  (Doc. no. 23.)  The discovery period ended June 21, 2019, and Plaintiff never identified the Doe officers on or after discovery such that the Marshals Service could be directed to effect service.  (See doc. no. 30.)  Detective Morris moved for summary judgment on July 22, 2019, contending his actions did not violate Plaintiff's constitutional rights and he is entitled to qualified immunity.  (Doc. no. 34.)

## II.   FACTS

Because Plaintiff did not satisfy Local Rule 56.1 by filing a response to Detective Morris's Statement of Material Facts, all facts proffered by Detective Morris that have evidentiary support in the record are hereby deemed admitted.  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond

with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding under L.R. 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted").

However, the Court has considered at summary judgment the statements made with specificity in Plaintiff's verified complaint and deposition because Plaintiff attested them to be true under penalty of perjury.  See 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991); see also Howard v. Memnon, 572 F. App'x 692, 694 (11th Cir. 2014) ("A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.")  Nonetheless, "[u]nsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment."  Howard, 572 F. App'x at 695 (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)).

### A.    Undisputed Facts

On July 7, 2017, Detective Morris was on duty in downtown Savannah while wearing plain clothes, driving an unmarked Ford Fusion, and being accompanied by his partner. (Detective Morris Decl., doc. no. 34-3, ¶ 5.)  At approximately 11:17 p.m., dispatch "toned out" an armed robbery at the intersection of Liberty and Barnard Streets.  (Id.)  The suspect's description was a tall, thin, black male, last seen running south and possibly in possession of women's purses.  (Id. ¶ 6.)  Detective Morris activated the patrol car's emergency equipment and drove in the direction of the robbery to set a perimeter on the southwest side.  (Id.)

3

Observing Plaintiff, who matched the description of the robbery suspect, on the northeast corner of the intersection of Gaston and Montgomery Streets, Detective Morris made a U-turn, approached Plaintiff, and asked to speak with him, to which Plaintiff responded, "Who are you?"  (Detective Morris Decl., ¶¶ 7-8; Pl.'s Dep., doc. no. 34-4, p. 2.)  When Detective Morris replied by explaining he was a police officer and activated his emergency lights as a show of proof, Plaintiff ran north on Montgomery Street.  (Detective Morris Decl., ¶¶ 8-9.)

Detective Morris followed Plaintiff in the patrol car until Plaintiff reached an apartment complex, where Detective Morris exited the vehicle and pursued Plaintiff on foot, shouting repeatedly, "Police! Stop running!"  (Detective Morris Decl., ¶ 11; Pl.'s Dep., p. 14.)  Because Plaintiff ignored these commands, Detective Morris unholstered his service weapon as he chased Plaintiff.  (Detective Morris Decl., ¶ 11.)  Plaintiff continued to run until he stopped on Martin Luther King Boulevard behind a Ford pickup truck.  (Detective Morris Decl., ¶ 12; Pl's Dep., p. 14.)  Detective Morris ordered Plaintiff to lie flat on the ground, but Plaintiff refused and Detective Morris used physical force to subdue Plaintiff on the ground and handcuff him.  (Detective Morris Decl., ¶12.)  Detective Morris did not have any opportunity to search Plaintiff's person prior to their physical struggle.  (Pl.'s Dep., p. 16.)  No force was used once Plaintiff was handcuffed.  (Detective. Morris Decl., ¶ 14.)  Plaintiff was not bleeding and did not lose consciousness.  (Pl.'s Dep., p. 12.)  The officers transported Plaintiff to Memorial Health University Medical Center for medical clearance where medical professionals determined Plaintiff suffered from a "facial contusion" and a possible "back strain."  (Doc. no. 34-5, p. 4.)  Plaintiff was released from the hospital and charged with two counts of armed robbery.  (Detective Morris Decl., ¶ 15.)

4

**B.      Detective Morris's Version of Disputed Facts**

When Detective Morris approached Plaintiff in his unmarked vehicle, he observed Plaintiff sweating profusely and breathing heavily with an excited expression on his face. (Id. ¶¶ 5, 8.)  During the foot pursuit, Detective Morris observed Plaintiff discard an item Detective Morris believed to be a firearm and a bulky item wrapped in black fabric.  (Id. ¶ 10.)  Detective Morris was afraid for his life as well as the lives of others due to the armed robbery offense, the firearm Plaintiff discarded, and the presence of numerous civilians in the area.  (Id. ¶ 11.)

When Plaintiff refused to comply with Detective Morris's commands to lie flat on the ground, Detective Morris approached Plaintiff, grabbed him by the upper torso, and used a leg sweep to take Plaintiff to the ground.  (Id.)  Detective Morris attempted to hold Plaintiff down by placing his service weapon into Plaintiff's back, but Plaintiff attempted to raise his head.  (Id. ¶ 13.)  In response, Detective Morris used his right hand, which was holding his service weapon, to push Plaintiff's head back toward the ground.  (Id.)  Other uniformed officers arrived and placed Plaintiff in handcuffs.  (Id. ¶ 14.)  At no time did Detective Morris strike Plaintiff with his weapon.  (Id. ¶ 16.)  As officers took Plaintiff into custody, Detective Morris ran back to the area where Plaintiff discarded the two items and located the two stolen purses wrapped in black cloth and a firearm.  (Id. ¶ 15.)

**C.      Plaintiff's Version of Disputed Facts**

When Detective Morris approached Plaintiff in the unmarked patrol car and asked to speak with him, Detective Morris identified himself as a police officer but did not show a badge or other identification, and he pointed a gun at Plaintiff through the window.  (Pl.'s

5

Dep., p. 2.)  Plaintiff fled because he was unsure whether Detective Morris was a police officer, but he did not stop running when he realized during the foot chase that Detective Morris was a police officer.  (Id. at 4-5.)  At the end of the pursuit, Plaintiff stopped behind a Ford pickup truck and balled up on the ground.  (Id. at 14.)

Plaintiff denies Detective Morris had to take him to the ground using a leg sweep maneuver and instead explains that he was already "balled up" on the ground when Detective Morris found him.  (Id. at 6.)  Plaintiff refused to comply with Detective Morris's attempt to arrest him, remaining in a "balled up" position and refusing to give up his arms for the handcuffs.  (Id. at 6-7.)  Detective Morris attempted to place Plaintiff under arrest by yanking Plaintiff's arms behind his back and repeatedly kneeing Plaintiff in the legs and lower back. (Id. at 6-9.)  As Plaintiff described the struggle, Detective Morris was "trying to wrestle with my arms yanking but he got his firearm in his hand."  (Id. at 7-8.)  Plaintiff did not comply by lying flat on the ground and offering his hands for the arrest because he was unsure whether Detective Morris would hurt him or even shoot him.  (Id. at 8.)

With the assistance of Officer McCowski, who arrived on scene during the struggle, Detective Morris was able to pin Plaintiff's leg to the ground.  (Id. at 10.)  Near the end of the struggle, someone hit Plaintiff across his right temple, and although he did not see the person or the blow, Plaintiff assumes it was Detective Morris hitting him with a service weapon.  (Id. at 11-12.)  Later in his deposition, however, Plaintiff testified Detective Morris used his service weapon to hit him in the head, and this testimony is unclear concerning the number of blows and whether this is the same incident concerning his right temple.  (Id. at 12.)  Plaintiff did not discard any items during the foot chase, and the firearm and purses

found after his arrest do not belong to him.  (<u>Id.</u> at 13.)

## III.    DISCUSSION

### A.    The John Doe Defendants Should Be Dismissed

Rule 4(m) empowers courts to extend the time for service with no predicate showing of good cause.    <u>Henderson v. United States</u>, 517 U.S. 654, 662-63 (1996); <u>Horenkamp v. Van Winkle & Co.</u>, 402 F.3d 1129, 1132 (11th Cir. 2005) (permitting extension of 120-day service period, even in absence of good cause).    However, even if a plaintiff fails to show good cause for failing to timely effect service, a court "must still consider whether any other circumstances warrant an extension of time based on the facts of the case."  <u>Lepone-Dempsey v. Carroll Cty. Comm'rs</u>, 476 F.3d 1277, 1282 (11th Cir. 2007).  Plaintiff has not shown good cause for failing to identify and timely effect service on the John Doe officers, and the Court finds that no other circumstances warrant an extension of the service period.  Therefore, the claims against the Doe officers should be dismissed without prejudice for failure to timely effect service and the Doe officers should be dismissed from this case.

### B.    Detective Morris is Entitled to Summary Judgement

#### 1.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

8

**2.    Detective Morris is Entitled to Summary Judgment Because the Undisputed Facts, and Disputed Facts Viewed in Plaintiff's Favor, Establish the Force Used on Plaintiff Was Reasonable and Proportional to the Need**

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).  However, any use of force must be reasonable, and "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." Scott v. Palmer, 210 F. Supp. 3d 1303, 1313 (N.D. Ala. 2016).  "The reasonableness inquiry [asks] whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (internal quotations omitted).  To determine whether the amount of force used by an officer was proper, the Court must ask whether a reasonable officer would believe the level of force used was necessary under the circumstances.  Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002).  Whether an officer's use of force was excessive or reasonable "is a 'pure question of law,' decided by the court." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013)).

This inquiry requires courts to "slosh [their] way through the fact bound morass of 'reasonableness.'" Scott v. Harris, 550 U.S. 372, 383 (2007).  Consequently, a court must "look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to

the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009); see also Graham, 490 U.S. at 396 (use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").  Additionally, a court must take into account that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.  Generally, courts do not "second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

In analyzing the objective reasonableness of force, a court must initially determine whether the officer needed to apply force at all by applying the three nonexclusive Graham factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Stephens, 852 F.3d at 1321 (quoting Graham, 490 U.S. at 396).  If force was indeed necessary, a court must then apply the Eleventh Circuit's three factors for determining whether the use of force was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Id. at 1324 (internal quotations omitted).  This "fact-specific inquiry takes into account facts as they reasonably appeared to the police officer." Williams v. Deal, 659 F. App'x 580, 597-98 (11th Cir. 2016).  Indeed, "[i]f an officer reasonably, but mistakenly, believes that one of the factors relevant to the merits of the constitutional excessive-force claim is present, the officer is justified in using

more force than in fact was needed." Id.

Viewing the circumstances from the perspective of a reasonable officer and applying the three Graham factors, Detective Morris necessarily used force in apprehending Plaintiff. The first factor weighs heavily in favor of Detective Morris because he reasonably suspected Plaintiff committed armed robbery, a dangerous felony. Second, from Detective Morris's perspective, Plaintiff posed an immediate threat to his safety and that of other citizens in the area. As the Eleventh Circuit has explained, the second factor can be reduced to a single question: "whether, given the circumstances, [the suspect] would have appeared to reasonable police officers to have been gravely dangerous." Pace v. Capobianco, 283 F.3d 1275, 1281 (11th Cir. 2002). It is beyond peradventure such a grave danger exists when an armed robbery suspect flees from police in a crowded downtown area late at night. Third, Plaintiff admits he ran from Detective Morris and actively resisted arrest when found.

Applying the three Stephens factors, the Court finds (1) the need for application of force was significant, (2) the amount of force was reasonable and proportional to the need, and (3) Plaintiff's injuries were minor. Stephens, 852 F.3d at 1324. Plaintiff left Detective Morris with no choice but to apply force by fleeing and resisting every effort to arrest him when found. The need for force was therefore obvious and significant. The force was also proportional to the need and resulted in minor injuries. Plaintiff testified Detective Morris repeatedly kneed him in the leg and lower back and struck him repeatedly in the head with his service weapon. (Pl.'s Dep., pp. 6-9, 12.) Importantly, however, Plaintiff does not allege the use of any such force after officers finally subdued Plaintiff and handcuffed him, and it is undisputed the resulting injuries were minor in the form of a mere head contusion and back

11

strain.  (Doc. no. 34-5, p. 4.)  Plaintiff never lost consciousness, was not bleeding, and did not show any signs of physical injury at the scene.  (Pl.'s Dep., p. 12.)  And while Plaintiff complains of continuous back pain, he admittedly has scoliosis, arthritis in his back, and a "messed up" disc from "falling out" in the jail in May 2019.  (Id. at 18-19.)  There is no evidence to suggest his continuing back problems relate to his physical struggle with Detective Morris rather than these other conditions and occurrence, and even if the causal link did exist, it would not change the Court's conclusion of reasonable and proportional force.

For all of these reasons, the Court finds Detective Morris is entitled to summary judgment because the force he used was necessary, reasonable, proportional to the need, and did not violate Plaintiff's Fourth Amendment rights.  See Hinson v. Bias, 927 F.3d 1103 (11th Cir. 2019) (finding reasonable and proportional force when officer used hammer strikes to subdue resisting suspect who defied repeated instructions to make hands available for cuffing); Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1355 (11th Cir. 2015) (finding reasonable and proportional force when officer struck, kicked, and used stun gun on suspect resisting arrest).  Indeed, Plaintiff might be considered lucky to have escaped this encounter with only a head contusion and back injury.  Common sense dictates that one risks his life by, late at night in a downtown area, fleeing from police who are searching for an armed robber, continuing to run when police yell stop and threaten to shoot, and physically resisting arrest.

**C.** **Even if Plaintiff Could Satisfy the Elements of An Excessive Force Claim, the Undisputed Facts, and Disputed Facts Viewed in Plaintiff's Favor, Establish Detective Morris is Entitled to Qualified Immunity**

"The doctrine of qualified immunity protects government officials, acting pursuant to their discretionary authority, 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson Cty., 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within his or her discretionary authority, they must be "(1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). Here, it is undisputed Detective Morris was acting under color of state law and within his discretionary authority when he apprehended Plaintiff. The burden now shifts to Plaintiff to show that: (1) Detective Morris violated his constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified

immunity." <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1314 (11th Cir. 2003).  Also, the Eleventh Circuit has held:  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." <u>Jenkins v. Talladega City Bd. of Educ.</u>, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Where a defendant pleads qualified immunity, the Eleventh Circuit "uses two methods to determine whether a reasonable officer would know his conduct is unconstitutional under the Fourth Amendment." <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1291 (11th Cir. 2011).  First, the Eleventh Circuit considers "the relevant case law at the time of the violation". <u>Id.</u>  In consideration of the relevant case law, "the right is clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'" <u>Id.</u> (quoting <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1333 (11th Cir. 2008)).  In contrast, "where the law is stated in broad propositions, a very high degree of prior factual particularity may be necessary." <u>Id.</u> (internal quotations omitted).  Alternatively, the second method looks at Detective Morris's "conduct, and inquires whether that conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [him], notwithstanding the lack of fact-specific case law.'" <u>Id.</u> (quoting <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1355 (11th Cir. 2002)).

Plaintiff cannot meet his burden of showing Detective Morris violated his clearly established Fourth Amendment constitutional right to be free from excessive force.  As discussed at length in §III.B.2 <u>supra</u>, Detective Morris necessarily used force in

apprehending Plaintiff who attempted to evade arrest, actively resisted arrest, and posed an immediate threat to Detective Morris's safety and that of other citizens in the area.  Once apprehended, it is undisputed any such use of force was discontinued.  As established by Eleventh Circuit precedent, where a suspect resists arrest and poses a danger to the arresting officer, the force applied, even when severe, is not excessive under the Fourth Amendment.  Hinson, 927 F.3d at 1117; Mobley, 783 F.3d at 1355.  Therefore, Detective Morris's use of force did not violate Plaintiff's clearly established Fourth Amendment rights and he is entitled to qualified immunity.

## IV.    Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis* ("IFP").  Although Plaintiff has not yet filed a notice of appeal, it is appropriate to address these issues now.  See Fed. R. App. R. 24(a)(3)(A) ("A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless the district court - - before or after the notice of appeal is filed - - certifies that the appeal is not taken in good faith . . . .").  An appeal cannot be taken IFP if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  See id.; 28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  See Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999) (citing Coppedge v. United States, 369 U.S. 438 (1962)).  A party does not proceed in good faith when seeking to advance a frivolous claim or argument.  See Coppedge, 369 U.S. at 445.  A claim or argument is frivolous when, on their face, the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v.

Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993)

(*per curiam*).  Stated another way, an IFP action is frivolous and, thus, not brought in good

faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528,

531 (11th Cir. 2002); see also Brown v. United States, Nos. CV 407-085, CR 403-001, 2009

WL 307872, at *1-2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and

any appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff IFP

status on appeal.

## V.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Detective

Morris's motion for summary judgment be **GRANTED**, (doc. no. 34), a final judgment be

**ENTERED** in favor of Detective Morris, Plaintiff's claims against the John Doe Defendants

be **DISMISSED** without prejudice for failure to timely effect service, all John Doe Defendants

be **DISMISSED** from this case, and this civil action be **CLOSED**.  The Court further

**RECOMMENDS** Plaintiff be **DENIED** leave to appeal IFP.

SO REPORTED and RECOMMENDED this 5th day of February, 2020, at Augusta,
Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA